IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARLO T GARNES,

        Plaintiff,

    v

JO ANNE B BARNHARDT, Commissioner of Social Security

        Defendant.
_____/

No C 02-4428 VRW

ORDER

        Plaintiff Marlo T Garnes, having prevailed in her appeal from the Social Security Administration's (SSA's) decision to terminate her benefits, now moves for an award of $46,172.48 in attorney fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 USC § 2412(d). Doc #30 (Pl Mot); Doc #33 (Pl Reply) at 8. Defendant Joanne B Barnhart opposes the motion. Doc #31 (Def Opp). For the reasons stated herein, the court GRANTS plaintiff an award of $38,796.75.

I

        Plaintiff's appeal to this court turned on the issue of the manner in which the Social Security Administration applied 20

CFR 416.1339, the implementing regulation for 42 USC § 1382(e)(4)(A).  20 CFR 416.1339(b) authorized the suspension of benefits in the month in which

> a warrant or order for the individual's arrest or apprehension, an order requiring the individual's appearance before a court or other appropriate tribunal * * * or similar order is issued by a court or other duly authorized tribunal on the basis of an appropriate finding that the individual — (A) Is fleeing, or has fled, to avoid prosecution as described in paragraph (a)(1) of this section * * *

or (ii) "The first month during which the individual fled to avoid such prosecution * * * if indicated in such warrant or order, or in a decision by a court or other appropriate tribunal."

      That regulation in turn was designed to implement a 1996 law codified at 42 USC § 1382(e)(4):

> No person shall be considered an eligible individual or eligible spouse for purposes of this subchapter with respect to any month during such month the person is –
>
> (A) fleeing to avoid persecution, or custody or confinement after conviction, under the laws of the place from which the person flees, for a crime, or an attempt to commit a crime, which is a felony under the laws of the place from which the person flees * * *; or
>
> (B) violating a condition of probation or parole imposed under Federal or State law.

      On November 5, 2004, this court granted plaintiff's motion for summary judgment on the basis that the SSA's Appeals Council failed to employ correct legal principles when applying 42 USC § 1382(e)(4) to the facts of plaintiff's case and that substantial evidence did not support the SSA's conclusions because:

2

(1) the plain language of the regulation compelled closer scrutiny of the factual basis for terminating an individual's SSI benefits under 42 USC § 1382(e)(4) because a warrant must contain a finding, as the regulation's language requires, that "plaintiff was fleeing to avoid prosecution," not merely that she failed to appear; (2) the SSA's contention that there was no intent requirement for an individual to be "fleeing" was unsupportable, in that the SSA was obligated to determine that actions by an individual that are used as the basis for terminating that individual's SSI benefits are, at least in part, motivated by an intent to avoid prosecution; and (3) the SSA's factual determination that plaintiff was "fleeing" was not supported by substantial evidence in the record. Doc # 27. The court entered judgment in favor of plaintiff and against defendant.

II

Plaintiff bases her motion for attorney fees and costs on the EAJA, which provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses * * * incurred by that party in any civil action * * * including proceedings for judicial review of agency action, brought by or against the United States * * * unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 USC § 2412(d). "Fees" includes "reasonable attorney fees," which are defined to include "prevailing market rates for the kind and quality of the services furnished, except that * * * attorney

3

fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." "Party" includes, as relevant here, "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed."

Plaintiff qualifies as a "prevailing party" for EAJA purposes. Her net worth did not exceed $2,000,000 at the time the civil action was filed, and her success in appealing the SSA's action meets the statutory standard. See Gutierrez v Barnhart, 274 F3d 1255, 1257 (9th Cir 2001) ("An applicant for disability benefits becomes a prevailing party for the purposes of the EAJA if the denial of her benefits is reversed and remanded regardless of whether disability benefits ultimately are awarded").

Plaintiff is not entitled to an award of fees, however, if the court determines that the position of the United States was "substantially justified" or that "special circumstances make an award unjust." 28 USC § 2412(d)(1)(A). In Pierce v Underwood, 487 US 552, 565 (1988), the United States Supreme Court defined "substantially justified" as "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." This definition is "no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue." Id.

Under the law of this circuit, the burden is on the government to demonstrate that its position was substantially justified or that special circumstances exist to make an award

4

unjust. <u>Gutierrez</u>, 274 F3d at 1258, citing <u>Love v Reilly</u>, 924 F2d 1492, 1495 (9th Cir 1991). The EAJA states that the "'position of the Unites States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based[.]" 28 USC § 2412(d)(2)(D). Accordingly, the court must determine whether the government was substantially justified in (1) "taking its original action" and (2) "defending the validity of the action in court." <u>Gutierrez</u>, 274 F3d at 1259.

Upon careful consideration of the parties' memoranda and the applicable law, the court concludes that neither the final decision of the SSA in plaintiff's case nor the agency's litigation position in defense of that decision was "substantially justified" and that there are no "special circumstances" present that would make an award unjust.

In the present case, the legal and factual errors in the Appeals Council's reasoning, as outlined above, were so significant as to necessitate the conclusion that the SSA's position was not "substantially justified." Moreover, while the SSA litigated <u>Garnes</u>, it was litigating two other cases involving the interpretation of the "fleeing felon" provision in 42 USC § 1382(e)(4)(A): <u>Blakely v Commissioner</u>, 330 F Supp 2d 910 (WD Mich 2004) and <u>Hull v Barnhart</u>, 336 F Supp 2d 1113 (D Or 2004). Although the commencement of litigation in <u>Garnes</u> in September 2002 and the filing of defendant's cross-motion for summary judgment in March 2003 predated the decisions in <u>Blakely</u> and <u>Hull</u>, the absence of adverse court judgments arising from the SSA's enforcement of

\\

the "fleeing felon" provision did not render the government's litigation stance "substantially justified."  It was not.

The Ninth Circuit does not recognize a "free pass" under the EAJA for issues not previously litigated:  "there is no per se rule that EAJA fees cannot be awarded where the government's litigation position contains an issue of first impression" and that the government's plea for "an automatic 'first impression' free pass * * * contravene[d] the purpose of the EAJA[.]"  Gutierrez, 274 F3d at 1259.  Moreover, whether a litigated issue is one of first impression may be considered as one factor in determining whether the government's litigation position is substantially justified, but does not constitute a "special circumstance."  Id.

In Gutierrez, the Ninth Circuit held that the district court abused its discretion by denying fees to a prevailing plaintiff.  The Ninth Circuit rejected the government's argument that 20 CFR § 1520a was "unclear":  "[t]he regulation in force before and during litigation stated that a [particular form] 'must be completed' and 'will be appended to the decision.'  There was nothing ambiguous about this requirement."  Id at 1259.  The court also rejected the government's argument that its litigation position was substantially justified by the lack of Ninth Circuit precedent where three other circuits had announced decisions contrary to the view advocated by the government.  Id at 1261.

In Pirus v Bowen, 869 F2d 536, 537-38 (9th Cir 1989), the Ninth Circuit affirmed the district court's holding that neither the agency's adoption of a regulation establishing age-based criteria for withholding benefits from divorced spouses of deceased wage-earners under 42 USC § 402(e)(1)-(3)(A) and its enforcement of

6

that regulation against plaintiff nor its litigation stance in defense of that regulation were "substantially justified."  As relevant here, the court gave little weight to the fact that the dispute concerned the agency's interpretation and implementation of a new statute, id at 539, and held that both the decision denying benefits and the defense of that position through litigation were not "substantially justified."

In opposition to Garnes's motion, the SSA relies on Kali v Bowen, 854 F2d 329, 332 (9th Cir 1988), which it characterizes as "remarkably similar" to the present case. Def Opp at 2.  In Kali, the plaintiffs sought fees under the EAJA after successfully challenging federal and state regulations that changed conditions of eligibility for Aid to Families with Dependent Children. Kali, 854 F2d at 330.  The district court held that the Secretary was substantially justified because the case was "one of first impression in this circuit.  If the question of law is unresolved and of unclear resolution, then the government's litigation of the issue is reasonable and substantially justified."  Id at 330-31 (citing Minor v United States, 797 F2d 738, 739 (9th Cir 1986); Foster v Tourtellotte, 704 F2d 1109 (9th Cir 1983)).  Reviewing the district court's decision under the "highly deferential" abuse-of-discretion standard, the Ninth Circuit affirmed, holding that "[t]he Secretary's interpretation of the complex statutory scheme was justifiable on the facial language of the relevant statutes and did not clearly contravene congressional intent."  Id at 334.  The government argues that because the SSA's position prevailed in Kali "despite a string of losses in other courts," Def Opp at 2, n 1, it must prevail on the instant motion.

7

*Kali*, however, is distinguishable from the instant case. This court found the SSA's interpretation of "fleeing" unsupportable and the POMS policy not even a reasonable reading of the SSA regulation. Accordingly, the SSA's interpretation was not a "facially correct reading of the statute" as in *Kali*. See *Kali*, 854 F2d at 334.

In summary, the court concludes that the government's position in this case was not "substantially justified" and an award of fees is therefore proper under the EAJA.

### III

Having determined that an award of fees is proper, the court must now determine the amount of the award. In particular, the court must determine whether an hourly rate in excess of the statutory rate is appropriate. See 28 USC § 2412 (2)(A). The specifics of plaintiff's fee request are set forth below:

|  | Yrs/practice | Hours | Rate | Total/row |
|---|---|---|---|---|
| Attorney Gerald A McIntyre | 38 | 89.3 | $500 | $44650.00 |
| Attorney Ralph Murphy | 30 | 5.3 | $152.78 | $809.73 |
| Paralegal E Madrigal |  | 8.3 | $75 | $622.50 |
| Costs |  |  |  | $90.25 |
| Total (with Costs) |  |  |  | $46172.48 |

The 5.3 hours billed for work performed by attorney Ralph Murphy of Bay Area Legal Aid in 2002 are billed at a rate stated to be the EAJA statutory cap with a cost-of-living adjustment

8

1  authorized by statute.  Pl Mot at 3, ¶ 10 and Ex C.  According to
2  Thangaraja v Gonzales, 428 F3d 870, 876-77 (9th Cir 2005), however,
3  the EAJA rate for work performed in 2002 stands at $144.43; Mr
4  Murphy's time will be compensated at that rate.  Mr Murphy's hours
5  constitute merely 5.6% of the total attorney hours expended.

6  Mr McIntyre's hours represent 94.4% of the total attorney
7  hours.  Only Mr McIntyre's hourly rate is at issue on this motion.
8  There are no specific EAJA provisions relating to paralegals, so an
9  appropriate rate for Ms Madrigal's time must also be determined.

10  An award in excess of the statutory rate is only
11  appropriate where "lawyers skilled and experienced enough to try
12  the case are [not only] in short supply," but there is also limited
13  availability of "attorneys having some distinctive knowledge or
14  specialized skill needful for the litigation in question."  Pierce
15  v Underwood, 487 US 552, 573, 108 SCt 2541, 2553 (1988).  The Ninth
16  Circuit has distilled the Supreme Court's Pierce v Underwood
17  holding into a two-prong test:  (1) the attorney must possess
18  "distinctive knowledge and skills" and (2) the qualifications must
19  be "in some way needed in the litigation and cannot be obtained
20  elsewhere at the statutory rate."  Pirus, 869 F2d at 542.

21  The prevailing attorneys in Pirus included the National
22  Senior Citizens Law Center in Los Angeles, one of the law offices
23  seeking a fee award on the instant motion.  About the plaintiff's
24  attorneys, the court held that their expertise was of a kind
25  warranting above-cap fee rates:

26  > In the instant case, Pirus's attorneys had
27  > developed a practice specialty in social security
28  > law.  Having litigated various class actions
   > challenging provisions of the Act, they had
   > extensive knowledge of the Act, its legislative

9

> history, and the development of the Social Security Administration's regulations. The expertise and skills that they developed are in many ways akin to those developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients – in this case, the elderly – and of how those needs could best be met under the existing statute and regulations.

Id.

On this motion, plaintiff's attorney Gerald A McIntyre argues that, like the attorneys in <u>Pirus</u>, he possesses distinctive knowledge and skills that were necessary to litigating <u>Garnes</u>. A 1967 graduate of Yale Law School and an attorney with the National Senior Citizens Law Center in Los Angeles since 1993, McIntyre specializes in Social Security and SSI non-disability issues. Pl Mot, McIntyre Decl at ¶¶ 3-4. In particular, McIntyre has developed "an even more specialized expertise" in the "fleeing felon" provision in 42 USC § 1382(e)(4)(A) and issues thereunder. Id at ¶ 5. McIntyre submits considerable evidence demonstrating this expertise in social security law and specifically detailing his experience with cases involving the "fleeing felon" provision and recognizing McIntyre as a national expert on this provision. See generally Pl Mot; Pl Reply.

McIntyre argues further that the second prong of the <u>Pirus</u> "special factor" test – that his special services were necessary to the litigation – was satisfied. McIntyre asserts that without his expertise in interpreting the "fleeing felon" provision this action could not have been brought. Pl Reply at 5. There had been no challenges to the Commissioner's interpretation of the statute before McIntyre began litigating the issue: "[i]n general, attorneys did not question the Commissioner's interpretation." Id.

10

Furthermore, McIntyre states that if he had not agreed to represent plaintiff, plaintiff would likely not have been able to find another attorney in California willing to take her case at the statutory EAJA rate.  Pl Mot at 2-3.

In opposition, the government argues that because there was no body of law under the "fleeing felon" statutes in existence at the time the case was filed and because the court relied on dictionary definitions of "fleeing" in making its ruling, the case did not require the distinctive knowledge and skill that would, under Pirus, warrant an award of fees in excess of the EAJA cap. Def Opp at 4.

In addition, the government challenges ten of the hours expended by paralegal Eleanor Madrigal on efforts to resolve plaintiff's Virginia arrest warrant and 1.8 hours spent by attorney McIntyre on the same matter, contending that these hours did not help the litigation, but rather helped plaintiff obtain benefits. In reply, plaintiff disputes that the hours in question were not expended on the litigation, but nonetheless reduces her demand to delete half of the disputed hours (5.0 hours of McIntyre's time, and 0.9 hours of Madrigal's time).

The court concludes that a typical social security disability practitioner would be unlikely to bring a case that involved challenging SSA's implementation of its own regulations as too complicated, difficult and risky.  McIntyre possessed distinctive knowledge of the whole statutory scheme and, specifically, the 1996 revisions to the Act and the new regulations issued thereunder, as well as of the SSA's policies and practices implementing those regulations; he employed this expertise directly

11

in his representation of plaintiff in this matter and his hours expended on the case are reasonable.  He is entitled to fees at a rate in excess of the EAJA statutory cap.

IV

It remains for the court to determine appropriate rates for the work of Mr McIntyre and Ms Madrigal.

The United States Supreme Court has stated "once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in Hensley [v Eckerhart, 461 US 424 (1983)]" — that is, "to allow the district court discretion to determine the amount of a fee award * * *." Commissioner, INS v Jean, 496 US 154, 161 (1989).

The blended rate for a reasonable attorney fee at prevailing market rates that this court has awarded under fee-shifting statutes such as 28 USC § 1447(c) would not be apposite here, because such rates are designed to remunerate the work of "reasonably competent counsel, not counsel of unusual skill and experience," e g, Albion Pacific Property Resources, LLC v Seligman, 329 F Supp 2d 1163, 1169 (ND Cal 2004).  Yet entitlement to above-cap rates under the EAJA is synonymous with distinctive knowledge and skills especially relevant to the litigation at issue.

Relying on Jean, another judge of this court awarded fees under the EAJA at rates up to $320 per hour in 1994, finding these to represent, in the words of EAJA, "prevailing market rates for

the kind and quality of services furnished". Sneede v Coye, 856 F Supp 526, 534 (ND Cal 1994)(Henderson, J).  The statutory scheme at issue was the Medicaid program, "recognized as one of the most complex, arcane, and difficult areas of practice [in which] very few attorneys are competent to practice."  Id at 535.  Lead counsel in the case had submitted evidence that she was "one of the, if not the, most knowledgeable and outstanding attorney [sic] litigating complex health care/Medicaid issues in California, and perhaps the country."  Id.  In this regard, Sneede is apposite.

It is the practice of the undersigned judge, however, to rely on official data to determine appropriate hourly rates, not on an attorney's self-proclaimed rates or declarations regarding hourly rates charged by law firms.  One reliable official source for rates that vary by experience levels is the Laffey matrix used in the District of Columbia.  See http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_4.html (citing Laffey v Northwest Airlines, Inc, 572 F Supp 354 (D DC 1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC Cir 1984), cert denied, 472 US 1021 (1985)).  See, e g, In re HPL Technologies, Inc Securities Litigation, 366 F Supp 2d 912, 921 (ND Cal 2005)(Laffey matrix used to determine fee rates where senior attorney devoted much time to settlement discussions and preparation).  Under the 2005 Laffey matrix, attorneys with 20 or more years of experience bill $390/hour and paralegals bill $110/hour.  These rates are tailored to the District of Columbia.  McIntyre is based in Los Angeles.  It is this court's practice to adjust fees drawn from the Laffey matrix in accordance with the locality pay differentials applicable to the federal judiciary, an

agency that employs legal professionals throughout the United States.  See http://www.opm.gov/oca/05tables/pdf/salhr.pdf.  The Washington-Baltimore area is subject to a +15.98% locality pay differential, whereas the Los Angeles-Long Beach-Riverside area is subject to a 23.18% locality pay differential.  The discrepancy between these two percentages – 6.2%[1] – amounts to the upward adjustment from the Laffey rates to which Mr McIntyre and Madrigal are entitled.

The court thus concludes that McIntyre's time should be compensated at $414 per hour and Madrigal's time at $117 per hour.  Combining these rates with the stated hours and rounding yields a $36,970 fee for McIntyre and an $981 fee for Madrigal.  Combining these amounts with a $765.50 fee for Murphy, the total attorneys' fee to which plaintiff is entitled comes to $38,706, plus $90.25 in costs.

V

The court GRANTS plaintiff's motion for attorneys' fees and costs.  Defendants must pay plaintiff's counsel an award of $38,796.75.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

---

[1] (123.18 - 115.98)/115.98 = 0.06208, or about 6.2%